JAMES CHESNUT ET AL. v. ELIZA ELLIOTT.

1. TAX SALE.   *Failure of assessor to append affidavit under Act of* 1878.
   The failure of the tax assessor to append to the assessment roll the affidavit
   prescribed by ? 31, Chapter III, Acts 1878, does not so vitiate the assessment
   as to render nugatory all subsequent proceedings with reference to it and
   annul all sales for taxes made under it.

2. SAME.   *Legislative intent.*
   It is manifest that the purpose of the legislature was to make all such require-
   ments as this directory and not mandatory in the sense that failure to ob-
   serve them will annul subsequent proceedings.

APPEAL from the Chancery Court of Washington County.

HON. W. G. PHELPS, Chancellor.

The lands in controversy were sold by the sheriff of Washington
County to the State in the year 1880 for taxes of the year 1879.
In 1881, Wm. Griffin purchased them from the State and sold
them to the appellee, who exhibited her bill against the appellant
and his tenant in possession, seeking a decree to confirm her title,
and from the decree to that effect this appeal is taken. The defense
interposed in the court below was that one R. G. Sims was elected
assessor for 1879, and that at the *July* meeting, 1879, of the board
of supervisors said Sims presented his assessment roll sworn to,
according to the Act of March 5, 1878, entitled "An Act in rela-
tion to the public revenue," for reception and ratification. The
roll was rejected and R. G. Sims appointed to make or complete
the assessment roll. At the *September* meeting, 1879, of the board
of supervisors, the assessment roll of R. G. Sims was presented,
accepted, and ratified, and all subsequent proceedings in reference
thereto regularly had. The chancery clerk of Washington County
testified that there had not been any other roll filed in his office ex-
cept the one filed by Sims in *July*, 1879, and that the roll handed to
the sheriff and under which the sale was made, was a copy of the roll
containing the oath of Sims of *July*, 1879. The roll was intro-
duced, and showed that on *July* 7, 1879, Sims had attached the
affidavit required by the act of 1878, but did not show any

subsequent affidavit, and it is insisted that the absence of a subsequent affidavit vitiates the sale of the lands for taxes.

*Trigg & Hirsh* and *Frank Johnston,* for the appellants.

We affirm that the rejection of assessment roll by the board at their August meeting made the oath of July 7, 1880, of the assessor a nullity, and the book itself as valueless for divestiture of title. If this view is adopted as correct, it only remains for us to determine if the affidavit of the appointed assessor was a fundamental essential, and the requirements of the act of 1878, § 31, of such a mandatory character as to make a compliance therewith an indispensable prerequisite before there could be a legal assessment.

1. It may be safely affirmed as a general rule that the party claiming title under a tax sale must show that the acts required to be done under the statute in order to divest the title of the former owner were performed by the officers of the law, and not simply by persons who assumed to act in an official capacity. Blackwell on Tax Titles, second edition, p. 91 and p. 345. This doctrine is more forcibly expressed by Judge Cooley in his work on Taxation, p. 289. *Warner v. Grand Haven,* 30 Mich. 24; *Sibley v. Smith,* 2 Mich. 486; *Lacey v. Davis,* 4 Mich. 140; *Colby v. Russel,* 3 Greenl. 227; *Johnson v. Elwood,* 53 N. Y. 431; *Townsend v. Wilson,* 9 Penn. St. 270; *Johnson v. Goodridge,* 15 Maine 29; *Kellar v. Savage,* 20 Maine 199. Where the statute requires the tax list to be verified by an oath made and subscribed, this means an *oath duly certified in writing,* and the absence of it is fatal to the *proceedings.* Cooley on Taxation (1876), 216 n.; *Yender v. Wheeler,* 9 Texas 408; 26 Ib. 296; *Robson v. Osborn,* 13 Texas 298; 28 Ib. 36; *Mawle v. Board of Supervisors,* 5 Reporter 473; *Brevoort v. Brooklyn,* 14 Reporter 247. We have a recent decision of our own court. " A book in the chancery clerk's office, containing names of persons and descriptions of lands, under caption." Land sold for taxes January 3, 1876, *without signature, certificate, or authentication of any kind,* by the sheriff or other person, is insufficient to show title in this State. *Maysor v. Banks,* 59 Miss. 447. This is a lucid enunciation of the principles we maintain as applicable to our cause.

2. The members of the board are only *pro tanto* assessors; their powers are limited; *they act judicially in equalizing and in this respect their decision is conclusive.* They have special and limited jurisdiction, and any unauthorized action is void; and their powers like those of all similar boards, are to be strictly construed. Cooley on Taxation (1876) 290–291, see n. 3.; *Tweed* v. *Metcalf,* 4 Mich. 575; 16 Ib. 12; *Bellinger* v. *Gray,* 51 N. Y. 610; *State* v. *Allen,* 43 Ill. 456; 49 Ib. 517; 50 Ib. 424;. 53 Ib. 477. They can cure defects in an assessment on the principle of equalization, but they cannot make an assessment.

*Rucks & Jayne,* for the appellee.

Was the assessment roll which was properly sworn to and filed by Sims in July, 1879, and which was afterward rejected by the board of supervisors as being incomplete, after being completed by Sims under an order of the board and refiled and accepted as the assessment roll for that year void because the officer completing the roll failed to append his affidavit to the same, as required by law? This was the question relied upon by appellants in the lower court. The making of the affidavit is not a condition precedent the non-performance of which could in the least affect the taxpayer. The oath of the assessor is not conclusive upon the board of supervisors, nor would it be upon a taxpayer. It was only intended that the officer charged with the duty of making a correct assessment should certify to the board of supervisors in the most solemn manner known to the law that he had discharged the duty imposed upon him by virtue of his office. This declaration under oath is for the assurance and satisfaction of the board of supervisors, and cannot in any manner affect the rights or liabilities of a taxpayer. We think the requirements of the statute in this respect directory, the compliance or non-compliance with which could in no wise affect the validity of the assessment roll. *Virden* v. *Bowers,* 55 Miss. 1; *Wolf* v. *Murphy,* 60 Miss. 1; Cooley on Const. Lim., 2d ed., 77; Cooley on Taxation 215, 219, *et seq.*; 2 N. J. Report 378. The law requires a *valid assessment,* but the affidavit is no part of an assessment. As to what constitutes an assessment, see Cooley on Taxation 258.

*Wm. Griffin,* on the same side.

In what possible manner could the failure of Sims to " swear " to the roll work the appellant an injury—what interest could it affect? None whatever. The purpose of the law, I imagine, was to require the assessor to make oath to the roll that he had faithfully performed his duty, and in the event he had not, he was liable to be punished. As to third persons, the statute is directory. Cooley on Const. Lim. 77 and 78, lays down this rule: " Those directions which are not of the essence of the thing to be done, but which are given with a view merely to the proper, orderly, and prompt conduct of the business, *and by a failure to obey which the rights of those interested will not be prejudiced, are not commonly to be regarded as mandatory ;* but if the act is performed, but not in the time and precise mode indicated, it may still be sufficient if that which is done accomplishes the substantial purpose of the statute.". In the notes to Blackwell on Tax Titles, Balch's Edition, 262, the following decision of the Supreme Court of New Jersey is quoted: " That the assessors shall assess property at its full and fair value, etc. ;" and it is also provided that every assessor shall annex to his duplicate an oath in writing that all assessments in his duplicates have been made according to the requirements of said statute. Held, *that the annexing such oath or affirmation was directory. State* v. *Metz,* 2 Vroom (N. J.) ; See *Virden* v. *Bowers,* 55 Miss. 1 ; *Wolf* v. *Murphy,* 60 Miss. 1 ; *Powers* v. *Penney,* 59 Miss. 5.

CAMPBELL, C. J., delivered the opinion of the court.

The single question in this case is : Did the failure of the assessor to append to the assessment roll the affidavit prescribed by " An Act in relation to Public Revenue," approved March 5, 1878, so vitiate the assessment as to render nugatory all subsequent proceedings with reference to it, and annul all sales for taxes made under it? We answer it in the negative. This affidavit is required to be made, after the completion of the assessment rolls, as an additional guaranty to his oath of office, to secure the performance of duty by the assessor in the particular matters to which the affidavit

relates.   It was assumed that, in order to be able, after completing
the roll, to make the required affidavit, the assessor would act as it
suggests to be necessary in order to make it truthfully, and it was
admonitory to him, as well as a guide to the board of supervisors, as
to what was required of him.   There is nothing to suggest a pur-
pose in the legislature to make the required affidavit a condition of ·
the validity of the assessment or essential to the jurisdiction of the
board of supervisors to deal with the rolls as the law directs.   On
the contrary, we think the manifest purpose of the legislature was
to make all such requirements as this directory, and not mandatory,
in the sense that failure to observe them will annul subsequent
proceedings.

*Decree affirmed.*